UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| FRED JAY SKOLNICK,<br>    *Petitioner*,<br>    *v.*<br>ANDREA WAINER,<br>    *Respondent*. | Civil No. 3:13cv1420 (JBA)<br><br><br>December 19, 2013 |

**RULING DENYING RESPONDENT'S
MOTION TO DISMISS**

On August 21, 2013, Petitioner Fred Jay Skolnick filed a Verified Petition [Doc. # 1] pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 ("Hague Convention"), and its domestic implementing legislation, the International Child Abduction Remedies Act, 42 U.S.C. § 11601 *et seq.* ("ICARA"), seeking the return of his five minor children to Singapore. Respondent now moves [Doc. # 51] to dismiss the Amended Petition for failure to state a claim. Respondent further contends that Petitioner has "waived" his right to seek relief under the Hague Convention or alternatively that he "acquiesced" in the retention of the children in the United States by stipulating to Respondent having temporary physical custody pending the outcome of this action. For the reasons that follow, Respondent's motion is denied.

I.     **Facts**

A.     **Background**

According to the Amended Verified Petition [Doc. # 36], Petitioner and his wife, Respondent Andrea Wainer, are both American citizens and were married in the United

States in November 1999, but have never lived here together as a married couple.  (Am. Pet. ¶ 5.)

They have five minor children together ranging in ages from four to twelve years old, all of whom were born in either Hong Kong or Tokyo:

- Z.S., born in Hong Kong and currently 12 years old;

- M.S., born in Tokyo and currently 10 years old;

- A.S., born in Tokyo and currently 8 years old;

- E.S., born in Hong Kong and currently 6 years old; and

- R.S., born in Tokyo and currently 4 years old.

In June 2011, while the parties were living in London, Ms. Wainer filed for divorce in the Principal Registry of the Family Division, London, England (the "London Action").  The London Action is still pending, but the court has not addressed custody. (*Id.* ¶ 9.)

In January 2012, the parties mutually agreed to move to Singapore with their children while the London Action was pending.  (*Id.* ¶ 10.)  In May 2013, with the aid of a meditator, the parties reached an agreement for shared custody in which the children would continuously live in the same apartment, and Petitioner and Respondent would alternate between living in this apartment with the children and their own studio apartments in the same building.  (*Id.* ¶ 13 & Ex. 4.)  Petitioner alleges that shortly after reaching this agreement, Respondent unlawfully removed the children from Singapore to the United States.  (*Id.* ¶ 7.)

Starting in April 2012 and up until the time of removal on May 31, 2013, Petitioner alleges that the parties and their five children were habitual residents of

Singapore within the meaning of the Hague Convention.  As the natural father of each of the children, Petitioner contends that under Singaporean law, he has rights of custody and was actually exercising such rights up until the wrongful removal.  (*Id.* ¶¶ 8, 14–15.)

On July 10, 2013, Petitioner filed an action in the High Court Republic of Singapore seeking the return of the children.[1]  (*Id.* ¶ 28 & Ex. 7.)

### B.     Proceedings in the United States

In July 2013, Petitioner learned that his children were staying in Maine and obtained an ex parte preliminary protective order awarding him temporary custody, but he was never able to serve this order upon Respondent and it was later vacated.  (*Id.*; Mot. to Dismiss at 3.)   Having failed in his efforts to locate his children and obtain Ms. Wainer's consent for him to visit them, Petitioner filed this action in the United States District Court for the Eastern District of New York, on August 21, 2013, which was transferred to this Court on September 20, 2013.  (*See* Order Granting Motion to Change Venue [Doc. # 24].)

On August 23, 2013, Petitioner went to the house where his five children were staying in Greenwich, Connecticut and found them under the care of "a person who had an infant child (assumed to be her own)," and "thus she did not appear to be capable of also caring for the Five Children at the same time."   (Am. Pet. ¶ 25.)   Therefore, "Petitioner took custody of R.S., the youngest of the Five Children, who was crying for her father."  (*Id.* ¶ 26.)  As a result, on that same day, Respondent obtained an ex parte

---

[1] At a November 22, 2013 hearing before this Court, the parties indicated that Respondent had filed a motion to dismiss the Singaporean action for lack of jurisdiction. The current status of that action is unknown.

protective order from the Superior Court of Stamford, prohibiting Petitioner from having contact with Respondent or the five children.  (*See Andrea Wainer v. Fred Skolnick*, DN-FST-FA-13-4025953-S, Ex. B to Mot. to Dismiss (the "First Superior Court Ex Parte Protective Order" and the "First Superior Court Action").)  The following day, through counsel, Petitioner advised a Greenwich Police Department detective that he would not return R.S. to Connecticut and that he expected the federal court to vacate the protective order.  (Arrest Warrant Application, Ex. A to Mot. to Dismiss at 5.)

Based on Petitioner's refusal to comply with the First Superior Court Ex Parte Protective Order, on August 24, 2013, the Superior Court issued an arrest warrant for Petitioner for Criminal Violation of a Restraining Order, Conn. Gen. Stat. § 52a-223b. (*Id.* at 2–3.)  Magistrate Judge Go of the Eastern District of New York facilitated the voluntary return of R.S. to Respondent on August 27, 2013, and Petitioner returned to Singapore with the arrest warrant against him still pending.  (Am. Pet. ¶¶ 26–27.)

On October 17, 2013, the parties entered into a stipulation to modify the First Superior Court Ex Parte Protective Order (the "Stipulation," Nevas Decl. Ex. 2, Pet'r's Mem. Supp. Emergency Mot. for Access [Doc. # 50-4]), approved by the Superior Court. The Stipulation provided that the First Superior Court Ex Parte Protective Order would remain in effect until January 8, 2014, but modified it to provide that "the parties shall have joint legal custody of each of the Minor Children with primary physical residence with" Ms. Wainer, and the children remaining enrolled in Greenwich public schools. (Stipulation ¶¶ 8(b)–(c).)  "After an initial period of reunification" with the children, Mr. Skolnick was to have "liberal and reasonable access to the Minor Children by phone, fax, e-mail, text message and/or Skype, as well as visitation as to be agreed upon by the

4

parties." (*Id.* ¶ 8(d).)  The parties agreed to stay the First Superior Court Action pending resolution of the Hague Convention Petition, and agreed that if either party sought any further relief it would be from this Court.  (*Id.* ¶ 8(k).)

Although the Stipulation modified the First Superior Court Ex Parte Protective Order, the criminal charge against Mr. Skolnick for his original violation of that order remained, and on November 14, 2013, Petitioner was arrested at Bradley International Airport upon his arrival to the United States.  The following day, he was arraigned in the Superior Court in Stamford (the "Second Superior Court Action"), and based on this criminal violation, the court imposed a new protective order (the "Second Superior Court Order of Protection," Ex. B to Resp't's Obj. to Emergency Mot. for Access [Doc. # 52]), requiring Mr. Skolnick to stay away from Ms. Wainer and their five children.   On November 21, 2013, the criminal charge against Petitioner was nolled, and the Second Superior Court Order of Protection was discharged.

### C.   Procedural History

On November 22, 2013, the Court held a hearing on Petitioner's motion [Doc. # 50] for an emergency order for visitation with the children.  The parties were able to come to an agreement to retain the services a child psychologist "to facilitate reunification between the children and Mr. Skolnick" starting the next morning with the purpose of enabling him to have "reasonable and liberal access to the children going forward" until Mr. Skolnick's departure to Singapore on December 1, 2013, and thereafter upon future visits pending the resolution of this action.  (Hr'g Tr. [Doc. # 59] at 2.)  The parties were able to execute this agreement and allow for Mr. Skolnick's visitation without further

involvement of the Court.  A hearing on the merits of this Petition is scheduled to commence on February 10, 2014.

## II.    Discussion[2]

"The Hague Convention . . . was designed 'to protect children internationally from the harmful effects of their wrongful removal or retention and to establish procedures to ensure their prompt return to the State of their habitual residence, as well as to secure protection for rights of access.'"  *Ozaltin v. Ozaltin*, 708 F.3d 355, 358–59 (2d Cir. 2013) (quoting Hague Convention, Preamble).  "The Convention's drafters were particularly concerned by the practice in which a family member would remove a child to jurisdictions more favorable to his or her custody claims in order to obtain a right of custody from the authorities of the country to which the child had been taken."  *Id.* at 359 (quoting *Mota v. Castillo,* 692 F.3d 108, 112 (2d Cir. 2012)).   "To avert this type of forum shopping, the Convention provides for 'the prompt return of children wrongfully removed to or retained in any Contracting State.'"  *Id.* (quoting Hague Convention, art. 1).  "And in deference to the authority of foreign legal systems, the Convention focuses solely on 'whether a child should be returned to her country of habitual residence for custody proceedings,' not on resolving 'any underlying custody dispute.'"  *Id.* (quoting *Mota,* 692 F.3d at 112).

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Although detailed allegations are not required, a claim will be found facially plausible only if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* Conclusory allegations are not sufficient.  *Id.* at 678–79.

A person can seek relief under the Convention by filing a petition in a court "authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed."[3]   42 U.S.C. § 11603(b).  To state a Hague Convention claim, a petitioner must allege that "the child has been wrongfully removed or retained within the meaning of the Convention."  42 U.S.C. § 11603(e).  This requires showing that "(1) the child was habitually resident in one State and has been removed to or retained in a different State; (2) the removal or retention was in breach of the petitioner's custody rights under the law of the State of habitual residence; and (3) the petitioner was exercising those rights at the time of the removal or retention."  *Gitter v. Gitter,* 396 F.3d 124, 130–31 (2d Cir. 2005).[4]

"If a petitioner prevails in a return action brought under § 11603(b), the court ordinarily must 'order the return of the child forthwith,'" *Ozaltin*, 708 F.3d at 360 (quoting Hague Convention, art. 12), unless the respondent can establish that one of four defenses apply, *Blondin v. Dubois*, 189 F.3d 240, 245 (2d Cir. 1999).  Two of those defenses may be established only by "clear and convincing evidence:" (1) that there is a "grave risk" that repatriation would "expose the child to physical or psychological harm

---

[3] The Hague Convention and ICARA "empower courts in the United States to determine only rights under the Convention and not the merits of any underlying child custody claims."  42 U.S.C. § 11601(b)(4).  Accordingly, while a petition is pending in federal court, "the Convention divests the state of jurisdiction over these custody issues until the merits of the Hague Convention claim have been resolved."  *Grieve v. Tamerin*, 269 F.3d 149, 153 (2d Cir. 2001).

[4] The United States has ratified the Hague Convention treaty and implemented its terms through ICARA.  Singapore acceded to the treaty in May 2012.  *See Souratgar v. Fair*, No. 12-CIV-7797 (PKC), 2012 WL 6700214, at *4 (S.D.N.Y. Dec. 26, 2012).

or otherwise place the child in an intolerable situation," Hague Convention, art. 13(b); or (2) that repatriation would "would not be permitted by the fundamental principles of the requested state relating to the protection of human rights and fundamental freedoms," *id.*, art. 20; *see also* 42 U.S.C. § 11603(e)(2)(A) (setting forth standard of proof for defenses pursuant to articles 13(b) and 20).  In contrast, the other two exceptions need only be established by a preponderance of the evidence: (3) that judicial proceedings were not commenced within one year of the child's abduction and the child is well-settled in the new environment, Hague Convention, art. 12; or (4) that the petitioner "was not actually exercising" custody rights at the time of the removal, *id.*, art. 13(a).

"As the federal statute implementing the Convention makes clear, these four exceptions are meant to be 'narrow.'" *Blondin*, 189 F.3d at 246 (quoting 42 U.S.C. § 11601(a)(4)).  "They do not authorize a court to exceed its Hague Convention function by making determinations, such as who is the better parent, that remain within the purview of the court with plenary jurisdiction over the question of custody." *Id.*  "Were a court to give an overly broad construction to its authority to grant exceptions under the Convention, it would frustrate a paramount purpose of that international agreement- namely, to preserve the status quo and to deter parents from crossing international boundaries in search of a more sympathetic court."  *Id.* (internal quotation marks omitted).

Ms. Wainer contends that there "is a dearth of factual allegations in the Petition regarding Petitioner's custody rights and the exercise of those rights" to state a plausible claim.  (Mot. to Dismiss at 12.)  Respondent also contends that by signing the Stipulation providing Ms. Wainer with primary physical custody, Petitioner "waived" his right to

seek relief under the Hague Convention, or in the alternative, that by doing so, he "acquiesced" in the retention of the children in the United States.[5]  (*Id.* at 13.)

### A.      Wrongful Removal

To state a claim under the Hague Convention, Petitioner must allege (1) that the children were habitually resident in Singapore and removed to or retained in the United States, (2) that Petitioner has a right of custody under Singaporean law, and (3) that he was actually exercising this right at the time of removal.   "Rights of custody" are defined under the law of the state of habitual residence, which in this case is alleged to be Singapore,[6] and "may arise in particular by operation of law or by reason of a judicial or administrative decision, or by reason of an agreement having legal effect under the law of that State."  *Gitter*, 396 F.3d at 130 (quoting Hague Convention, art. 3).

"[R]ather than defining custody in precise terms or referring to the laws of different nations pertaining to parental rights, the Convention uses the unadorned term 'rights of custody' to recognize '*all* the ways in which custody of children can be exercised' through 'a flexible interpretation of the terms used, which allows the greatest possible

---

[5] Respondent devoted the majority of her opening brief to the argument that Mr. Skolnick was barred from seeking relief under the fugitive disentitlement doctrine.  (*See* Mot. to Dismiss [Doc. # 51] at 6–12.)  On the same day that Respondent's Motion to Dismiss was filed, the criminal charges against Petitioner were nolled.  Respondent does not contend in her reply [Doc. # 61] that the doctrine has any continued application given that Petitioner is no longer a fugitive from justice.  Accordingly, the Court deems this argument abandoned or moot.

[6] Respondent does not contest that Singapore is the state of habitual residence, although she asserts without elaboration that she "does not concede" this point.  (Mot. to Dismiss at 13 n.5.)

number of cases to be brought into consideration.'"   *Abbott v. Abbott*, 560 U.S. 1, 19 (2010) (quoting report of the Hague Convention).

Likewise, the "Hague Convention does not define 'exercise,'" but it is liberally construed to "find 'exercise' whenever a parent with *de jure* custody rights keeps, or seeks to keep, any sort of regular contact with his or her child." *Friedrich v. Friedrich*, 78 F.3d 1060, 1065 (6th Cir. 1996).   A "person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child." *Id.* at 1066.   This liberal construction is consistent with a court's duty in a Hague Convention petition to not adjudicate the underlying merits of a custody dispute. *See id.* at 1065 ("[A]n American decision about the adequacy of one parent's exercise of custody rights is dangerously close to forbidden territory: the merits of the custody dispute.").

"Once it is determined that a party had valid custody rights under the country of origin's laws, '[v]ery little is required of the applicant in support of the allegation that custody rights have actually been or would have been exercised.   The applicant need only provide some preliminary evidence that he or she actually exercised custody of the child, for instance, took physical care of the child.'"   *In re Application of Adan*, 437 F.3d 381, 391 (3d Cir. 2006) (quoting U.S. Dep't of State, Hague Convention International Child Abduction Convention: Legal Analysis, 51 Fed. Reg.10494, 10507 (Mar. 26, 1986)).

Under these standards, the Amended Petition amply alleges a Hague Convention claim.   Petitioner alleges that as the natural parent of the children, he has a right of custody under Singaporean law.   (Am. Pet. ¶ 14.)   The Amended Petition further alleges that the parties mutually agreed to relocate to Singapore and establish it as their habitual

residence, and up until the children's removal in May 2013, exercised joint physical custody over the children.  (*Id.* ¶¶ 5, 8–13).  The Amended Petition also details how the parties reached an elaborate agreement for shared custody in Singapore whereby the children would continuously live in the same apartment, and Ms. Wainer and Mr. Skolnick would alternate between the children's apartment and their respective separate studio apartments in the same building.  (*Id.* ¶ 13 & Ex. 4.)  Once the five children were removed from Singapore, the Amended Petition describes how Petitioner attempted to pursue legal remedies in Singapore and the United States, and traveled to Connecticut in an attempt to reunite with his children.  (*Id.* ¶¶ 20–27.)  Accordingly, Petitioner has stated a plausible claim for relief under the Hague Convention.  *See Hofmann v. Sender*, 716 F.3d 282, 291 (2d Cir. 2013) ("Hofmann's multiple visits to New York as well as his participation in family vacations demonstrated that he was exercising his custodial rights up to the time the divorce proceedings were initiated."); *Norden-Powers v. Beveridge*, 125 F. Supp. 2d 634, 640 (E.D.N.Y. 2000) ("The most generous reading of the record in favor of Respondent shows that Petitioners have been active, if not dogged, in their exercise of their rights of custody.  As discussed at length above, the Petitioners each participated in decision-making regarding the education and social welfare of their children, looked after their medical needs and participated in the care of the person of each child.  Finally, each Petitioner contacted their children less [than] 16 days before their removal.").

### B.      Waiver and Acquiescence

Respondent makes two related arguments regarding the Stipulation.  First, she argues that by signing it, "Petitioner waived his rights under the Hague Convention by stipulating to primary physical custody of the parties' children" with Respondent.  (Mot.

to Dismiss at 13.)  In the alternative, Respondent asserts that by signing the Stipulation, Petitioner "acquiesced" in the retention of the children in the United States.  (*Id.* at 14.)

Although Respondent conflates these two arguments, her reply brief makes clear that Respondent's "waiver" argument is really one of ripeness or jurisdiction.  She asserts that "Petitioner does not have a claim for wrongful retention at this time because, pursuant to the parties' agreed upon Stipulation, Ms. Wainer is to have physical custody of the children in Greenwich at least until January 8, 2014.  And, there is no express or implied provision in the Stipulation that on January 8, 2014, Ms. Wainer is to return the children to Singapore."  (Reply at 5–6.)  Because Respondent is entitled to exercise primary physical custody over the children under the Stipulation, she asserts that Petitioner's Amended Petition alleges no more than an "anticipatory breach of the parties' Stipulation."  (*Id.* at 6.)

An Article III court cannot entertain a claim that is not ripe, i.e. one "which is based upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998) (internal quotation marks omitted).  "Because the 'ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction,' the court can raise it *sua sponte*."  *Id.* (quoting *Reno v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 58 n.8 (1993).

A Hague Convention claim can allege either "wrongful removal *or* retention," 42 U.S.C. § 11603(f)(2) (emphasis added), and as discussed above, Petitioner has amply alleged wrongful removal.  This allegation is sufficient to state a justiciable claim for relief.  To the extent that Respondent asserts that due to the Stipulation her retention of the

12

children is no longer "wrongful," this assertion goes to the affirmative defense of acquiescence, which will be discussed in turn.  Respondent cites two cases purporting to support her jurisdictional argument.

In *Toren v. Toren*, 191 F.3d 23, 25 (1st Cir. 1999), the parties had entered into a separation agreement in 1996, approved by a court in Jerusalem, providing that the children would reside with their mother in Massachusetts for a period of years, but not beyond July 2000.  In 1998, well before the time that the agreed period of residence with the mother was to end, the father filed a Hague Convention petition, alleging that the mother's initiation of a custody action in Massachusetts evinced her intention to wrongfully retain the couple's two children in the United States.  *Id.* at 26–27.  The First Circuit held that the district court lacked jurisdiction over the petition, because at the time it was filed, the respondent was legally entitled to exercise custody of the children in the United States pursuant to the parties' original custody agreement.  Accordingly, there was neither wrongful removal nor retention, and "the father [was] seeking a judicial remedy for an anticipatory violation of the Hague Convention."  *Id.* at 28.

Respondent also cites *Falk v. Sinclair*, 692 F. Supp. 2d 147 (D. Me. 2010) for the proposition that "there can be no wrongful retention until such time as the children are required to be returned to Singapore" under the terms of the Stipulation.  (Reply at 4.) Like *Toren*, *Falk* involved consensual removal followed by an allegation of wrongful retention.  In the portion of *Falk* cited by Respondent, however, the court addressed only the application of the "well-settled" affirmative defense (applicable where a petition is filed more than one year after wrongful removal or retention), and ruled that the "wrongful retention" occurred when the child was scheduled to return to Germany under

13

the terms of the parties' agreement rather than when the father first stated his intention to repudiate this agreement.[7]  *Id.* at 158–59.  *Falk* did not address and has no application to the question of ripeness and here, in contrast to *Falk*, Petitioner has separately pled a wrongful removal claim, and the Stipulation was agreed to by the parties after the alleged wrongful removal.

Whether events subsequent to the filing of the Amended Petition defeat Petitioner's claim speaks to the affirmative defense of acquiescence.[8]  As an initial matter, Respondent's invocation of this affirmative defense is not properly considered on Respondent's motion to dismiss.  Affirmative defenses may only "be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint."  *McKenna v. Wright,* 386 F.3d 432, 436 (2d Cir. 2004).  The Stipulation upon which Respondent relies was not signed until after Petitioner filed the Amended Petition.  The resolution of this defense on a motion to dismiss is especially inappropriate here given that "even where the grounds for one of [the] 'narrow' exceptions have been established, the district court is not necessarily bound to allow the child to remain with the abducting parent," and must

---

[7] The court rejected the respondent's separate argument that the petitioner had acquiesced in the child's retention in Maine, finding the "evidence is to the contrary," given that the respondent immediately objected and filed a legal action in Germany, and the respondent's showing fell "well short of the standard articulated in *Friedrich* for a finding of acquiescence."  *Id.* at 165.

[8] Although Respondent asserts that due to his acquiescence, Petitioner "cannot state a claim under the Hague for wrongful retention" (Mot. to Dismiss at 14), Petitioner is not required to allege the absence of acquiescence in order to state a claim for relief. Rather, acquiescence is an affirmative defense, and Respondent bears the burden of proof to establish that it applies.  *See Blondin*, 189 F.3d at 246.

exercise its discretion in light of the entire record developed at a hearing on the merits to consider whether such an order would further the aims of the Convention. *Blondin*, 189 F.3d at 246 n.4.[9]

On the merits, Respondent's argument fails as well. As Respondent acknowledges, "acquiescence under the Convention requires either: an act or statement with the requisite formality, such as testimony in a judicial proceeding; a convincing written renunciation of rights; or a consistent attitude of acquiescence over a significant period of time." *Friedrich*, 78 F.3d at 1070 (footnotes omitted). The showing required is "stringent." *Baxter v. Baxter*, 423 F.3d 363, 370 (3d Cir. 2005). The Stipulation was drafted to modify the First Superior Court Ex Parte Protective Order, which was entered without Petitioner's consent and prevented him from exercising custody or visitation rights. Rather than evincing Mr. Skolnick's intent to renounce his rights, the Stipulation expanded his rights in contrast to the limitations imposed by the First Superior Court Ex Parte Protective Order.

The parties agreed that they "shall have joint legal custody of each of the Minor Children with primary physical residence with" Ms. Wainer. (Stipulation ¶¶ 8(b).) The Stipulation also provided that it was entered into "without prejudice to either party's claims" before this Court, "the action pending in London or the Singapore Action

---

[9] Additionally, Petitioner's subjective intent when he agreed to the Stipulation could be relevant to whether the acquiescence defense applies. *See Nicolson v. Pappalardo*, 605 F.3d 100, 107 (1st Cir. 2010). This disputed issue of fact cannot be resolved on a motion to dismiss or even at summary judgment. *See Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir. 1984) ("It was error for the court to have decided on the merits the disputed issue of intent, which should have been left for the jury.").

including, but not limited to, any claims regarding custody of or visitation with the Minor Children." (*Id.* ¶ 8(l).)  Another provision appears to not only undermine Respondent's argument, but also to prohibit her from even advancing it: "No adverse inference shall be drawn from the continuation of the Conditions of Protection pursuant to this Stipulation or the underlying Order, and neither party nor its attorneys in any jurisdiction shall request any tribunal to do so." (*Id.* ¶ 8(m).)

Far from "a convincing written renunciation of rights," *Friedrich*, 78 F.3d at 1070, by its own terms the Stipulation evinced the parties' intent to reach a temporary agreement for custody, and for Mr. Skolnick to gain, not renounce, his access to the children pending the outcome of this case.

In *Nicolson v. Pappalardo*, 605 F.3d 100, 102 (1st Cir. 2010), the respondent traveled with her child from Australia to Maine and, after deciding to remain in Maine, obtained an ex parte temporary protective order in state court against her husband. Through his attorney, the husband later consented to the entry of a final order of protection, which awarded "temporary parental rights and responsibilities (custody)" to the mother, but provided that the order could be "amended by [a] court of competent jurisdiction." *Id.* at 103.  The First Circuit rejected the wife's claim that this consent order evinced the husband's acquiescence to his child's retention in the United States.  The court noted that a "clear and formal *consent order* by the non-U.S. parent agreeing to let a state court decide final custody would, both linguistically and for policy reasons, warrant treatment as acquiescence," but acquiescence was not established by consent to the temporary protective order.  *Id.* at 107.  Rather, the protective order was "primarily

concerned with dealing with an immediate threat of abuse" and making arrangement for only "temporary custody." *Id.* at 106–108.

As in *Nicolson*, the parties' Stipulation clearly evinces their intent only to preserve the status quo pending the resolution of this action.  The Stipulation is explicitly only temporary in duration, provides for "joint legal custody"—with Ms. Wainer retaining only "physical custody" for the duration and Mr. Skolnick obtaining liberal visitation rights—and specifically contemplates this Court's resolution of this Petition.  (Stipulation ¶¶ 8(b).)  Thus, this provisional agreement does not meet the stringent standards for a finding of acquiescence.

III.    **Conclusion**

For the reasons set forth above, Respondent's Motion [Doc. # 51] to Dismiss is DENIED.  This action shall proceed as set forth in the Court's previously entered Endorsement Order [Doc. # 58].

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 19th day of December, 2013.